Leona VANDERHOOF, John G. Weiss, Arnold T. Weiss, Elmer Weiss, Laura Chapman, and Reinhard Weiss, Plaintiffs, Appellees, and Cross-Appellees,

v.

GRAVEL PRODUCTS, INC., a corporation, Defendant, Third-Party Plaintiff, Appellant, and Cross-Appellee,

and

Edgar Weiss, Defendant, Third-Party Plaintiff, Appellee, and Cross-Appellee,

v.

Allegra I. BOECKEL, Third-Party Defendant,

and

Leroy L. Boeckel and Allegra Boeckel, Third-Party Defendants, Appellees, and Cross-Appellants.

Civ. No. 11169.

Supreme Court of North Dakota.

April 16, 1987.

James E. Nostdahl, of Pringle & Herigstad, Minot, for plaintiffs, appellees, and cross-appellees.

Larry Quast, of Hagen, Quast & Alexander, Beulah, for defendant, third-party plaintiff, appellee, and cross-appellee.

Joseph A. Vogel, of Vogel Law Firm, Mandan, for third-party defendants, appellees, and cross-appellants.

Lyle Witham, of Lamont Law Office, Minot, for defendant, third-party plaintiff, appellant, and cross-appellee.

VANDE WALLE, Justice.

Leroy and Allegra Boeckel [the Boeckels] appeal from the notice of entry of a district court judgment which awards damages to Leona Vanderhoof, John Weiss, Arnold Weiss, Elmer Weiss, Laura Chapman, Reinhard Weiss, and Edgar Weiss [the Weiss heirs] for trespass to and conversion of gravel. Gravel Products, Inc., appeals from the entry of a district court judgment requiring it to indemnify the Boeckels for their share of the damages awarded. We affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

On June 12, 1979, the Weiss heirs executed an agreement creating a trust to facilitate sale of land which had passed to

them through their parents' estates. The heirs deeded the property to Leona Vanderhoof as trustee. The trust agreement and deed executed by the Weiss heirs expressly reserved all minerals, including gravel.

Vanderhoof, assisted by legal counsel,[1] listed the land for sale in area newspapers. Leroy Boeckel submitted a written bid on the property and participated in subsequent oral bidding on the property at the trustee's attorney's office on September 12, 1979. Boeckel's high bid was accepted and he paid 7 percent of the purchase price on that date. It was agreed that the balance would be due within 25 days, at which time a deed would be delivered.

The trustee executed a deed to Allegra Boeckel (Leroy's wife) on September 12, 1979, upon condition that it be held by the trustee's attorney until the balance of the purchase price was paid. The deed conveyed the property to Allegra Boeckel but contained the following provision:

> "Subject, however, to all outstanding easements, rights-of-way, and mineral severances of record."

The trust agreement and the deed from the Weiss heirs to the trustee were recorded on September 13, 1979, the day after the sale at the attorney's office. The deed from the trustee to Allegra Boeckel was delivered to Leroy Boeckel on October 8, 1979, and this deed was recorded on May 13, 1980.

In September 1983 the Boeckels entered into a gravel lease with Gravel Products, Inc., covering the property obtained from the trust. Gravel Products mined gravel on the premises between October 4 and October 21, 1983. Gravel Products continued to remove gravel which had been stockpiled on the property and continued to pay royalties to the Boeckels after being advised by the trustee that the gravel had been reserved to the Weiss heirs.

The Weiss heirs, except Edgar Weiss, sued Gravel Products for trespass and conversion of the gravel. Edgar was named as a defendant pursuant to Rule 19, N.D.R. Civ.P. Edgar answered the complaint seeking to quiet title to his share of the gravel and sued Gravel Products for conversion. Edgar also sued Allegra Boeckel as a third-party defendant, alleging conversion of Edgar's share of the gravel. Gravel Products answered the complaint with a general denial and also sued Leroy and Allegra Boeckel as third-party defendants, seeking indemnity. The Boeckels answered the third-party complaints, alleging that they had acquired all mineral interests, including gravel, by the deed of September 12. The Boeckels sought to quiet title to all minerals, including gravel, and counterclaimed against the plaintiffs for indemnity for any money judgment against the Boeckels by Gravel Products for breach of the covenant of quiet possession. The Boeckels also counterclaimed against Gravel Products, seeking indemnity for any money judgment against them in favor of the plaintiffs and Edgar. In an amended answer and counterclaim the Boeckels sought rescission of their purchase of the land.

Various motions for summary judgment were filed. The court granted summary judgment quieting title to the minerals, including gravel, in the Weiss heirs, and held that Gravel Products was liable to the plaintiffs and Edgar for trespass and conversion of the gravel and that Allegra Boeckel was liable to the plaintiffs and Edgar for conversion of the gravel. The court further ordered that Gravel Products indemnify Allegra Boeckel for any damages for which she was liable.[2]

The case proceeded to trial on the issues of the amount of damages and whether the conversion and trespass were willful or innocent. The jury returned a verdict find-

---

1. Vanderhoof is represented by different counsel in this litigation.

2. Because only Gravel Products had sued Leroy Boeckel, and Gravel Products' claim for indemnity against the Boeckels was dismissed when summary judgment was entered granting indemnity to the Boeckels, Leroy Boeckel was at that point dismissed from the action. Although damages were not assessed against Leroy in favor of the Weiss heirs, Leroy remains in the case on appeal as an appellee in Gravel Products' appeal from the summary judgment which dismissed him from the case.

ing that Gravel Products had willfully trespassed and converted the gravel, and that Allegra Boeckel had willfully converted the gravel. Damages were assessed in the amount of $69,205.95. The court entered judgment on the jury verdict, and Gravel Products and the Boeckels have appealed.

Before considering the issues on their merits we must, because of the notices of appeal filed in this case, determine whether or not we have jurisdiction of this appeal. The right of appeal in this State is purely statutory and is a jurisdictional matter which we will consider *sua sponte. Midwest Federal Savings Bank v. Symington,* 393 N.W.2d 753 (N.D.1986). Gravel Products has attempted to appeal from "the entry of Summary Judgment," and the Boeckels have attempted to appeal from "Notice of Entry of Summary Judgments ... and Notice of Entry of Judgment on Jury Verdict."

■ We have previously held that an attempted appeal from an order for judgment or a memorandum decision will be treated as an appeal from a subsequently entered consistent judgment, if one exists. *Dunseith Sand & Gravel Co. v. Albrecht,* 379 N.W.2d 803 (N.D.1986) (order for judgment); *Federal Savings and Loan Insurance Corp. v. Albrecht,* 379 N.W.2d 266 (N.D.1985) (memorandum decision). Similarly, we believe that the interests of justice require that we treat an attempted appeal from the entry of judgment or the notice of entry of judgment as a proper appeal from the previously entered judgment. We therefore treat the appeals as being from the judgments and proceed to dispose of the case on the merits.

The following issues are dispositive of this appeal:

I. Did the Boeckels have constructive notice of the terms of the June 12 deed and trust agreement?

II. Are the Boeckels entitled to indemnity from Gravel Products?

I

■ The Boeckels sought to have title to the gravel quieted in themselves, alleging that the Weiss heirs should be estopped from asserting title to the gravel. The Boeckels alternatively sought rescission of the contract. In effect, these issues were disposed of by the trial court's determination that the Boeckels had constructive notice of the prior reservation of gravel by the Weiss heirs and therefore took subject to the reservation. The Boeckels allege on appeal that the trial court erred in holding that they had constructive notice of the prior reservation of gravel.

An unrecorded instrument is valid as between the parties and those who have notice thereof. Section 47-19-46, N.D.C.C. Notice may be either actual or constructive. Section 1-01-22, N.D.C.C. Constructive notice is notice imputed by law to a person not having actual notice. Section 1-01-24, N.D.C.C. Section 1-01-25, N.D.C.C., provides:

"*1-01-25. What deemed constructive notice.*— Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself."

The issue presented in this case is whether the Boeckels had knowledge of facts sufficient to put a prudent person upon inquiry as to the true state of the trustee's title.

The Boeckels admit that they learned that the land was for sale through an advertisement in a local newspaper. The newspaper ad specifically stated that "no mineral interests will pass with the land," and that the land would be sold "subject to any leases, encumbrances, covenants, reservations, restrictions, easements, conditions and rights appearing of record." In spite of those clear indications that there might be prior reservations of interests in the property, the Boeckels did not conduct any inquiry into the state of the trustee's title but rather assumed that they were receiving the gravel underlying the property.

The fact that the seller was a trustee should also have indicated to the Boeckels the need to inquire about the state of the

trustee's title. In a case applying Section 1-01-25, N.D.C.C., to a purchaser of land from a trust, we stated that "[t]he presence of the word 'Trustee' after [the seller's] signature on the earnest money agreement certainly suggests possibilities a prospective purchaser should investigate." *Gerhardt Construction Co. v. Wachter Real Estate Trust*, 306 N.W.2d 223, 226 (N.D.1981).

The Boeckels are deemed to have constructive notice of the records in the register of deeds' office. *Burlington Northern, Inc. v. Hall*, 322 N.W.2d 233 (N.D. 1982); see Section 47-19-19, N.D.C.C. A review of the records in the register of deeds' office on or just prior to September 12, 1979, would have shown that the individual Weiss heirs were the record owners and that the trustee had no recorded interest in the land. *Burlington Northern, Inc. v. Hall* involved a nearly identical fact situation and we held that the facts were sufficient to put a prudent person upon inquiry regarding his grantor's rights in the property.

In *Burlington Northern*, Northwestern Improvement Company executed a contract for deed on April 15, 1944, agreeing to convey twelve sections of land to Ralph and Meta Mosser, but reserving all minerals. The contract for deed was not recorded. On December 29, 1948, Northwestern Improvement deeded the property to the Mossers, reserving all minerals. By a contract for deed dated December 1, 1948, the Mossers had agreed to convey the land to L.P. Hall. Both this contract for deed and the subsequent deed of the property to Hall, dated August 29, 1951, reserved fifty percent of all minerals to the Mossers. On January 20, 1949, Northwestern Improvement conveyed the minerals to Burlington Northern's predecessor in interest.

Burlington Northern and Hall's heirs each sought to quiet title to the minerals. On appeal, we held that Hall had constructive notice of Northwestern Improvement's reservation of minerals in the unrecorded contract for deed:

"On 1 December 1948 L.P. Hall had constructive notice of the records in the register of deeds' office. These records established that Northwestern was the record owner and that Mossers had no recorded interest in the land. These are facts sufficient to put a prudent person upon inquiry concerning what right Mossers had in the property. Such an inquiry would have necessarily revealed the terms of the contract for deed. Based on these factors, we agree with the trial court that on 1 December 1948 Hall was chargeable with constructive notice of the terms of the 1944 contract for deed between Mossers and Northwestern and that Hall purchased the land in question with notice that Northwestern had reserved the mineral interests." *Burlington Northern, supra*, 322 N.W.2d at 238.

We also held that Hall's constructive notice barred his heirs' allegation of equitable estoppel:

"We believe that the Hall heirs' claims as to equitable estoppel must fail because they have not met the third requirement set out above. That requirement is that they were destitute of all knowledge of the true state of title and of the means of acquiring such knowledge. L.P. Hall had a duty to inquire of Mossers by what right they were selling the property and to follow up with investigation in a manner and to the extent that would have been suggested to a prudent person by the contents of the record title. Such an inquiry would have established that Northwestern had reserved the mineral interest in the land when they conveyed the property to the Mossers. Although the railroad deliberately may not have recorded its mineral deed, a finding upon which we express no opinion, we believe the fact that the deeds were unrecorded is of little significance because L.P. Hall had constructive notice of the mineral reservation in the Northwestern-Mossers instrument. Based on this, we believe the Hall heirs' reliance upon the doctrine of equitable estoppel is unfounded." *Burlington Northern, supra*, 322 N.W.2d at 240.

The holding in *Burlington Northern* governs our disposition of this case. If the Boeckels had investigated the records in the register of deeds' office prior to their purchase of the property they would have discovered that the Weiss heirs, in their individual capacities, were the record owners of the land, and that the trustee held no interest of record. In addition, the terms set forth in the newspaper advertisement and the designation of the seller as a trustee provided further reason to question exactly what was to be passed with the land. These facts were sufficient to put a prudent person upon inquiry regarding the trustee's interest in the land. We conclude that the Boeckels were charged with constructive notice of the terms of the June 12 trust agreement and deed, including the reservation of gravel.

The Boeckels allege that *McLaughlin v. Lambourn*, 359 N.W.2d 370 (N.D.1985), requires a different result. In *McLaughlin*, C.T. and Ruth Moravec, predecessors in interest to McLaughlin, executed a contract for deed on March 15, 1950, to the Lambourns. No reservation of minerals was included. Twelve days later the Federal Farm Mortgage Corporation [FFMC] deeded the property to the Moravecs, reserving fifty percent of the minerals. Two years later FFMC quit-claimed its previously reserved fifty percent of the minerals to the Moravecs. In 1960, upon completion of payments under the contract for deed, the Moravecs' successors in interest deeded the property to the Lambourns with no reservation of minerals. In 1982, McLaughlin, who had received deeds of distribution to fifty percent of the minerals through the Moravecs' estates, brought an action to quiet title to fifty percent of the minerals.

We upheld the trial court's determination that McLaughlin's claim was barred by estoppel by deed. McLaughlin asserted on appeal that the Lambourns had constructive notice that the Moravecs did not own the property at the time they executed the contract for deed, and that estoppel by deed was therefore inappropriate. We noted that a party who fails to check the records in the register of deeds' office is deemed to have had constructive notice of

the true state of his grantor's title. See also, *Burlington Northern, supra; Sittner v. Mistelski*, 140 N.W.2d 360 (N.D. 1966). In *McLaughlin*, inquiry by the Lambourns would have disclosed only that the Moravecs did not at that time own the property, but would not have indicated that the Moravecs did not intend to convey all the minerals with the surface. Because it was permissible for the Moravecs to sell land on a contract for deed without having title to the land at the time, we held that the Lambourns could rightfully have assumed that the Moravecs would acquire title in time to convey according to the contract. *McLaughlin, supra*, 359 N.W.2d at 374.

In the instant case, the Boeckels did not check the records in the register of deeds' office and are therefore charged with constructive notice of the true state of the trustee's title. Unlike *McLaughlin*, wherein full inquiry by the purchasers would have disclosed only that the Moravecs did not have record title, in this case inquiry by the Boeckels would have disclosed that the minerals had previously been reserved to the Weiss heirs.

The Boeckels also rely upon *Werth v. Willer*, 64 N.D. 119, 250 N.W. 543 (1933), to support their contention that they are entitled to rescind their purchase of the land. In *Werth v. Willer*, 64 N.D. at 128, 250 N.W. at 547, we held that a vendee had no duty to examine the vendor's title when the vendor covenanted to convey title "in fee clear of all encumbrances." We concluded that the vendee was therefore entitled to rescind when it became apparent that the vendor could not convey title free of all encumbrances. *Werth* is clearly distinguishable on its facts. The trustee in this case did not purport to convey "clear of all encumbrances," and in fact there were several factors which indicated the existence of prior encumbrances. The terms set forth in the newspaper ad, the designation of the seller as a trustee, and the language of the deed itself were clear indications that the land was subject to outstanding interests.

We conclude that the trial court did not err in holding that the Boeckels had constructive notice of the prior reservation of gravel by the Weiss heirs. Therefore, the Weiss heirs are not estopped to assert their title to the gravel and the Boeckels are not entitled to rescind the purchase of the property.

The Boeckels have also alleged on appeal that the Weiss heirs breached an implied covenant of good faith and fair dealing, and that the trial court erred in certain evidentiary rulings. We have reviewed these issues and find them to be without merit.

## II

Gravel Products has appealed from the summary judgment requiring it to indemnify the Boeckels. Gravel Products alleges that the trial court erroneously determined that a "hold harmless" clause included in the gravel lease was unambiguous and required Gravel Products to indemnify the Boeckels for damages awarded against them in favor of the Weiss heirs.

■■■ The general rules for construction of contracts apply to the construction of a lease, including a gravel lease. *Johnson v. Mineral Estate, Inc.*, 343 N.W.2d 778 (N.D. 1984); *Trauger v. Helm Bros., Inc.*, 279 N.W.2d 406 (N.D.1979). The determination of whether a contract is ambiguous is a question of law for the court. *Heitkamp v. Milbank Mutual Insurance Co.*, 383 N.W.2d 834 (N.D.1986); *Johnson v. Mineral Estate, supra.* An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of the term, phrase, or clause in question. *Heitkamp v. Milbank Mutual, supra; Johnson v. Mineral Estate, supra.* On appeal, this court will independently review the contract to determine whether the trial court erred in its determination of ambiguity of the contract. *Heitkamp v. Milbank Mutual, supra.*

■■■ Section 9–07–06, N.D.C.C., requires that a contract be interpreted as a whole:

"*9–07–06. Contract interpreted as a whole.*— The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others."

The intention of the parties to a contract must be gathered from the entire instrument and not from isolated clauses. *Trauger v. Helm Bros., supra.* Every clause, sentence, or provision should be given effect consistent with the main purpose of the contract. *Bridston v. Dover Corp.*, 352 N.W.2d 194 (N.D.1984). It is "almost universally held that an indemnity agreement will not be interpreted to indemnify a party against the consequences of his own negligence unless that construction is very clearly intended." *Bridston v. Dover Corp., supra,* 352 N.W.2d at 196.

The "hold harmless" clause is contained in Paragraph 4d of the gravel lease:

"Lessee to indemnify and hold lessor harmless from all injuries, damages and claims resulting or arising from lessee's occupation of and operation on said premises."

A review of the entire gravel lease reveals that a rational argument can be made that Paragraph 4d does not require indemnity to the Boeckels for every imaginable claim which might arise. Paragraph 4c, which immediately precedes the "hold harmless" clause, provides in pertinent part: "Lessee shall be liable and responsible for damages to cattle injured or killed due to its operations." If the parties intended that Paragraph 4d would apply to all possible claims of any nature whatsoever there would be no reason to include a specific provision regarding liability for injuries to cattle. The trial court's construction of the lease renders Paragraph 4c mere surplusage. We do not believe that the lease agreement clearly and unambiguously evidences an intent by the parties to indemnify the Boeckels against the consequences of their own conduct.

The Boeckels assert that the "hold harmless" clause in this case is virtually identical to the clause which was held to unambiguously provide indemnity to the lessor in *Bridston*. Two important factors distinguish this case from *Bridston*. First,

there was no contention raised in *Bridston* that the indemnity clause conflicted with another clause or rendered another contract provision ineffectual. Second, the indemnity clause in *Bridston* included a requirement that the lessee procure liability insurance in specified amounts naming the lessor as an additional insured. That requirement was particularly significant to our conclusion that the agreement was intended by the parties to indemnify the lessor for its own acts: "There could be no purpose for the insurance provision other than to protect [the lessor] from the consequences of its own negligent acts." *Bridston v. Dover Corp., supra,* 352 N.W.2d at 197.

We conclude that rational arguments can be made in support of contrary interpretations of Paragraph 4d of the gravel lease. The trial court therefore erred in determining that the clause clearly and unambiguously provided indemnification for the Boeckels for the consequences of their own acts. Summary judgment was therefore inappropriate.

Gravel Products also asserts that the trial court erred in failing to find that the Boeckels breached a covenant of quiet possession. An agreement to lease real property binds the lessor to secure to the lessee quiet possession of the property against all persons lawfully claiming the same. Section 47–16–08, N.D.C.C. Gravel Products contends that it is entitled to indemnity from the Boeckels if the covenant of quiet possession applies. The trial court, apparently concluding that the "hold harmless" clause constituted a waiver of Gravel Products' right to quiet possession, did not resolve this issue. Because we have held that the trial court erred in determining that the lease unambiguously required indemnification by Gravel Products, the

court will have the opportunity on remand to reconsider this issue.[3]

We reverse the summary judgment requiring Gravel Products to indemnify the Boeckels for damages awarded in favor of the Weiss heirs and we remand for further proceedings consistent with this opinion. In all other respects, the judgments are affirmed.

ERICKSTAD, C.J., LEVINE and GIERKE, JJ., and PEDERSON, Surrogate Judge, concur.

PEDERSON, S.J., sitting in place of MESCHKE, J., disqualified.

PEDERSON, Surrogate Judge, concurring specially.

The rulings in the cases of *Dunseith Sand & Gravel Co. v. Albrecht,* 379 N.W.2d 803 (N.D.1986) and *Federal Savings and Loan Insurance Corp. v. Albrecht,* 379 N.W.2d 266 (N.D.1985) constitute a significant departure from the precedent generally followed while I was a Justice of this court. In treating an appeal from a Notice of Entry of Judgment as an appeal from the judgment itself, we take an additional step away from established precedent. I, never-the-less, concur because I think that we should be reexamining the validity of punishing clients for the neglect in the preciseness of their attorney. A further refinement may be necessary.

A few of the decisions which are reversed, at least in part are: *Moore v. N.D. Workmen's Comp. Bur.,* 374 N.W.2d 71 (N.D.1985); *Cook v. Cook,* 364 N.W.2d 74 (N.D.1985); *Martinson Bros. v. Hjellum,* 359 N.W.2d 865 (N.D.1985); *Union State Bank v. Miller,* 358 N.W.2d 222 (N.D.1984); *Eisenzimmer v. City of Balfour,* 352

---

**3.** Gravel Products also alleges on appeal that the trial court's construction of the "hold harmless" clause violates the proscription of Section 9–08–02, N.D.C.C., which provides:

"*9–08–02. Contracts against the policy of the law.*— All contracts which have for their object, directly or indirectly, the exempting of anyone from responsibility for his own fraud or willful injury to the person or property of another, or violation of law, whether willful

or negligent, are against the policy of the law."

Gravel Products contends that pursuant to this statute the "hold harmless" clause cannot be construed to indemnify Allegra Boeckel for her willful conversion of the gravel.

Gravel Products did not raise this issue in the trial court. We will not consider issues raised for the first time on appeal. E.g., *Christensen v. Christensen,* 397 N.W.2d 456 (N.D.1986).

N.W.2d 628 (N.D.1984); *Kilzer v. Binstock*, 339 N.W.2d 569 (N.D.1983); *Sacchini v. Dickinson State College*, 338 N.W.2d 81 (N.D.1983); *Aasmundstad v. Dickinson State College*, 337 N.W.2d 792 (N.D.1983); *Jensen v. Zuern*, 336 N.W.2d 330 (N.D. 1983); *Gauer v. Klemetson*, 333 N.W.2d 436 (N.D.1983); *Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596 (N.D. 1983); *In Interest of R.A.S.*, 321 N.W.2d 468 (N.D.1982); *Piccagli v. N.D. State Health Dept.*, 319 N.W.2d 484 (N.D.1982); *First Nat. Bank of Hettinger v. Dangerud*, 316 N.W.2d 102 (N.D.1982); and *Gebeke v. Arthur Mercantile Co.*, 138 N.W.2d 796 (N.D.1965).