Raymond BARSNESS, an individual, Plaintiff,

v.

GENERAL DIESEL & EQUIPMENT CO., INC., a North Dakota corporation, Defendant, Third-Party Plaintiff, Appellee and Cross–Appellant,

v.

FIRST ASSEMBLY OF GOD CHURCH, Third–Party Defendant, Appellant and Cross–Appellee,

and

Northern Improvement Company, Third–Party Defendant.

Civ. No. 870155.

Supreme Court of North Dakota.

April 18, 1988.

Cahill & Maring, P.A., Moorhead, for defendant, third-party plaintiff, appellee and cross-appellant; argued by David S. Maring. Appearance by Daniel Schwandt, Senior Law Student.

Nilles, Hansen & Davies, Ltd., Fargo, for third-party defendant, appellant and cross-appellee; argued by William P. Harrie.

GIERKE, Justice.

First Assembly of God Church (First Assembly) appeals from a district court judgment requiring it to indemnify General Diesel & Equipment Co., Inc. (General Diesel) for damages sustained by Raymond Barsness and for attorney's fees and costs incurred by General Diesel in defending against Barsness' action, and General Diesel cross-appeals from that part of the judgment denying its attorney's fees and costs incurred in bringing a motion for indemnity from First Assembly. We affirm in part, reverse in part, and remand for entry of judgment consistent with this opinion.

In 1980 First Assembly began construction of a new sanctuary in Fargo. First Assembly leased a crane from General Diesel and obtained a manbasket from Northern Improvement Company for use with the crane. On August 24, 1981, Barsness and another employee of First Assembly were lifted in the manbasket to check spacing between four arches. While suspended above ground, the chain connecting the manbasket to the crane became disconnected, causing the manbasket to fall to the ground. This resulted in serious injury to Barsness.

First Assembly was a complying employer under the North Dakota Workers Compensation Act, and Barsness recovered workers compensation benefits as a result of the accident. Barsness then commenced an action against General Diesel, alleging negligent entrustment of the crane to an inexperienced operator and negligent failure to warn.[1] General Diesel denied that it was negligent and brought a third-party action for indemnity against First Assembly based upon language in the written lease agreement between General Diesel and First Assembly.

A jury returned a special verdict finding that Barsness sustained injuries resulting in damages of $95,000 and apportioning negligence as follows: one percent to Barsness, two percent to General Diesel, and ninety-seven percent to First Assembly. Pursuant to the special verdict, judgment was entered in favor of Barsness and against General Diesel for $98,050. That amount was arrived at by reducing the $95,000 verdict by $950 for Barsness' one percent negligence and adding $4,000 for costs.

---

1. In *Barsness v. General Diesel & Equipment Co., Inc.,* 383 N.W.2d 840 (N.D.1986), we reversed a summary judgment in favor of General Diesel and held that genuine issues of material fact existed about General Diesel's alleged negligent entrustment of the crane to First Assembly and about General Diesel's alleged negligent failure to warn.

General Diesel then sought indemnification from First Assembly pursuant to terms of the written lease. After briefing and oral argument, the trial court concluded that First Assembly waived its right to the exclusive remedy provisions of the Workers Compensation Act by entering into the written lease agreement and determined that General Diesel was entitled to indemnity from First Assembly for $98,050 plus $22,942.10 for attorney's fees and expenses incurred by General Diesel in defending the action brought by Barsness. However, the trial court refused to grant General Diesel indemnification for $2,010 in attorney's fees and expenses incurred by General Diesel in bringing a motion for indemnity from First Assembly, holding that recovery for that amount went beyond the scope of the written lease. First Assembly has appealed from that part of the judgment granting indemnification and awarding attorney's fees and expenses, and General Diesel has cross-appealed from that part of the judgment denying recovery of attorney's fees and expenses incurred in seeking indemnity from First Assembly.

First Assembly contends that the trial court erred in determining that General Diesel was entitled to contractual indemnity from First Assembly under the terms of the written lease. First Assembly asserts that because it is an immune employer under the exclusive remedy provisions of the North Dakota Workers Compensation Act, General Diesel is precluded from obtaining indemnity under the terms of the lease. First Assembly argues that to allow a third-party tortfeasor to obtain indemnification from a statutorily immune employer would circumvent the Workers Compensation Act. General Diesel responds that it is entitled to indemnity from First Assembly because of the contractual duty to indemnify in the written lease.

■ Generally, when an employer complies with the workers compensation statutes, the employee's exclusive remedy against the employer is limited to recovery under the workers compensation statutes. *Gernand v. Ost Services, Inc.*, 298 N.W.2d 500 (N.D.1980); *see* Sections 65–01–01, 65–01–08, 65–04–28, and 65–05–06, N.D.C.C.[2] Although Section 65–01–09, N.D.C.C., authorizes an injured employee to recover damages from a third-party tortfeasor when the injuries result from the negligence of that third party, in *Gernand v. Ost Services, Inc., supra,* we held that the exclusive remedy provisions of the workers compensation statutes prevent the third-party tortfeasor from obtaining contribution from the employer, irrespective of the joint tortfeasor contribution act, Chapter 32–38, N.D.C.C. In *Layman v. Braunschweigische Maschinenbauanstalt,* 343 N.W.2d 334 (N.D.1983), we held that the reduction of a plaintiff-employee's recovery against a third-party tortfeasor by the per-

2. Section 65–01–01, N.D.C.C., provides:

"*65–01–01. Purposes of compensation law —Police power.* The state of North Dakota, exercising its police and sovereign powers, declares that the prosperity of the state depends in a large measure upon the well-being of its wage workers, and, hence, for workmen injured in hazardous employments, and for their families and dependents, sure and certain relief is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding, or compensation, except as otherwise provided in this title, and to that end, *all civil actions and civil claims for relief for such personal injuries and all jurisdiction of the courts of the state over such causes are abolished except as is otherwise provided in this title.*" [Emphasis added.]

Section 65–01–08, N.D.C.C., provides:

"*65–01–08. Contributing employer relieved from liability for injury to employee.* Where a local or out-of-state employer has secured the payment of compensation to his employees by contributing premiums to the fund, *the employee,* and the parents of a minor employee, or the representatives or beneficiaries of either, *have no claim for relief against such contributing employer* or against any agent, servant, or other employee of such employer for damages for personal injuries, *but shall look solely to the fund for compensation.*" [Emphasis added.]

Section 65–05–06, N.D.C.C., provides that payment of compensation or other benefits by the Workers Compensation Bureau to an injured employee is "in lieu of any and all claims for relief whatsoever against the employer" of the injured employee. Section 65–04–28, N.D.C.C., provides that complying employers are not liable to respond in damages "at common law or by statute for injury to or death of any employee."

centage of negligence attributable to the plaintiff's employer was contrary to the doctrine of joint and several liability of Section 9–10–07, N.D.C.C.[3] In situations where an employer and a third-party tortfeasor both negligently cause an employee's injuries, *Layman, supra,* and *Gernand, supra,* impose liability on the third-party tortfeasor for the negligence of the third party and the employer without permitting the third-party tortfeasor to get contribution from the employer.

Although we have addressed issues of contribution and joint and several liability within the context of the exclusive remedy rule, we have not heretofore specifically addressed whether a third-party tortfeasor may obtain indemnification from a statutorily immune employer pursuant to a contract of indemnification. However, we have recognized that there are exceptions to the exclusive remedy rule [*Gernand v. Ost Services, Inc., supra* ], and we have said that in the absence of an explicitly contractual duty to indemnify, an independent duty to indemnify will not be inferred unless the party seeking indemnity clearly shows a well-settled duty between the employer and a third party. *Sayler v. Holstrom,* 239 N.W.2d 276 (N.D.1976); *see United Pacific Insurance Co. v. Aetna Insurance Co.,* 311 N.W.2d 170 (N.D.1981); *see also, Sorensen v. Tenneco Oil Co.,* 609 F.Supp. 838 (D.N.D.1985); *White v. McKenzie Electric Cooperative, Inc.,* 225 F.Supp. 940 (D.N.D.1964).

A vast majority of jurisdictions have recognized that an express contract of indemnification is an exception to the exclusive remedy rule. Annot., 100 A.L.R.3d p. 380 § 8(b) (1980); 2A Larson, Workmen's Compensation Law, §§ 76.42, 76.43 (1983). The frequently-stated rationale for this exception is that the indemnity claim is not an action for damages but is a separate legal claim against an employer based upon a contractual relationship between the employer and third-party tortfeasor. 2A Larson, Workmen's Compensation Law, ¶ 76.42 (1983).

First Assembly asserts that we should not follow the majority rule because the better reasoned rule is that a third-party tortfeasor is not entitled to contractual indemnification from an employer who has complied with the provisions of the Workers Compensation Act, citing *Paul Krebs & Associates v. Matthews & Fritts Construction Co., Inc.,* 356 So.2d 638 (Ala.1978); *Raisler v. Burlington Northern Railroad Co.,* 717 P.2d 535 (Mont.1985); and *Roberts v. Gray's Crane & Rigging, Inc.,* 73 Or. App. 29, 697 P.2d 985 (1985). We decline to follow those cases.

*Roberts, supra,* and *Raisler, supra,* involved specific statutory language precluding a third-party tortfeasor from obtaining indemnity from an employer.[4] Our statutes do not include a similar provision [*see* fn. 2], and we decline to follow the rationale of *Roberts* or *Raisler* in the absence of such a provision.

In *Paul Krebs, supra,* the Alabama Supreme Court construed its workers compensation provisions[5] to preclude a third-party

---

3. Section 15 of Ch. 404, N.D.Sess.Laws 1987, provides that Section 9–10–07, N.D.C.C., is suspended from July 8, 1987 through June 30, 1993 and takes effect again on July 1, 1993.

4. Or.Rev.Stat. § 656.018, provides:
"(1)(a) *The liability of every employer who satisfies the duty required by ORS 656.017(1) is exclusive and in place of all other liability* arising out of compensable injuries to his subject workers, the workers' beneficiaries and anyone otherwise entitled to recover damages from the employer on account of such injuries or claims resulting therefrom, *specifically including claims for contribution or indemnity asserted by third persons* from whom damages are sought on account of such injuries, except as specifically provided other-

wise in ORS 656.001 to 656.794." [Emphasis added.]
Mont.Code Ann. § 39–71–411, provides, in part, that:
"*an employer is not subject* to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act or *for any claims for contribution or indemnity asserted by a third person* from whom damages are sought on account of such injuries or death." [Emphasis added.]

5. Ala.Code, § 25–5–53, provides:
"Except as provided in this article and article 2, as the case may be, of this chapter, no employer included within the terms of this chapter shall be held civilly liable for any personal injury to or death of any workman

tortfeasor from recovery for indemnity from an employer:

"The statute says that no employer shall be held civilly liable for injuries to workmen injured in the course of his employment. To allow a third-party tort-feasor to recover over against the employer for injury to an employee would be to allow indirectly what is prohibited directly.

\* \* \* \* \* \*

"§ 25–5–53 says that no employer (under the Workmen's Compensation Act) 'shall be held *civilly liable*' for personal injuries to workmen. Krebs would have us engraft an exception to this language which would permit a civil suit against the employer where the employer agrees to indemnify a third-party tort-feasor sued for causing the injury to the employee. This writes into the legislation an exception which is not there." *Paul Krebs, supra,* 356 So.2d at 639–640. [Emphasis in original.]

■ Professor Larson has criticized *Paul Krebs* as a "departure from the mainstream of workmen's compensation decisions" and "aberrational." 2A Larson, Workmen's Compensation Law ¶ 76.43. We decline to follow the literal statutory interpretation adopted in Alabama, and instead align ourselves with the majority rule that a contract of indemnification is an exception to the exclusive remedy rule because it is an action on a separate legal claim based upon a contractual obligation rather than "at common law or by statute for injury to or death of any employee." Section 65–04–28, N.D.C.C. That result is consistent with the implication in *Sayler v. Holstrom, supra,* that an independent contractual relationship is sufficient to permit indemnity against the employer. We conclude that our workers compensation statutes do not prohibit enforcement of an employer's contractual agreement to indemnify a third-party tortfeasor.

First Assembly also contends that a contractual indemnity agreement must contain specific language waiving its immunity un-

der the workers compensation statutes, citing *Diamond International Corp. v. Sullivan & Merritt, Inc.,* 493 A.2d 1043 (Me. 1985); and *Brown v. Prime Construction Co., Inc.,* 102 Wash.2d 235, 684 P.2d 73 (1984). The Washington Supreme Court articulated the requirements for a valid waiver:

"We hold that an indemnity clause of this type is enforceable only if it clearly and specifically contains a waiver of the immunity of the workers' compensation act, either by so stating or by specifically stating that the indemnitor assumes potential liability for actions brought by its own employees." *Brown v. Prime Construction Co., supra,* 684 P.2d at 75.

Although such an express provision would clearly indicate that the employer was waiving the exclusive remedy provisions of the workers compensation statutes, we do not believe that the intention of the parties must be disregarded because of the absence of those precise words. *See Bridston v. Dover Corp.,* 352 N.W.2d 194 (N.D.1984). Rather, we will look to the language of the particular contract to determine the scope of the waiver.

■ This lease agreement must be examined in light of the applicable standards for construction of a written contract. The construction of a written contract to determine its legal effect is a question of law for the court to decide. *Vanderhoof v. Gravel Products, Inc.,* 404 N.W.2d 485 (N.D.1987); *Bridston v. Dover Corp., supra.* The intention of the parties to a contract must be gathered from the entire instrument and not from isolated clauses. *Vanderhoof, supra.* A contract must be construed as a whole with every clause, sentence, or provision given effect consistent with the main purpose of the contract. *Id.* Whether or not a contract is ambiguous is a question of law for the court to decide. *Dawn Enterprises v. Luna,* 399 N.W.2d 303 (N.D.1987). An ambiguity exists when rational arguments can be made in support of contrary positions as to the meaning of a term,

who is an employee of the employer and whose injury or death is due to an accident while engaged in the service or business of

the employer, the cause of which accident originates in the employment...."

phrase, or clause of a contract. *Id.* If an ambiguity exists, extrinsic evidence is admissible to determine the parties' intent. *Id.* On appeal, this court will independently review the contract to determine whether the lower court erred in its determination regarding the ambiguity of the contract. *Vanderhoof, supra.*

The lease between General Diesel and First Assembly provided:

"4. LIABILITY: Lessee agrees to indemnify Lessor from (1) any loss because of damage to or loss of equipment Leased hereunder from any cause whatsoever, and (2) and liability arising out of the operation of said equipment or its use while same is in the possession of Lessee. Lessor shall not be liable to Lessee for any loss, cost, damage or expenses suffered or incurred by Lessee in the operation, maintenance or use of the equipment or from inability to use or operate it for any reason.

INSURANCE: Lessee agrees at its expense to keep said equipment insured under a contractor's ALL RISK form with not more than $250 deductible clause, containing a loss payable clause in favor of Lessor. Satisfactory evidence of this as well as public and property damage liability coverage with minimum limits of 250/500/250 will be furnished Lessor."

By the clear terms of that lease, First Assembly agreed to indemnify General Diesel from "liability arising out of the operation of said equipment or its use while same is in the possession" of First Assembly. We believe that language clearly and unambiguously reflects the parties' intent that First Assembly indemnify General Diesel for liability arising out of First Assembly's operation of the crane, and we therefore conclude that, by that language, First Assembly waived its right to the exclusive remedy provisions of the Workers Compensation Act.[6]

First Assembly further argues that General Diesel was not entitled to indemnification for liability imposed solely because of its own negligence. First Assembly thus contends that General Diesel is not entitled to indemnity from First Assembly for the damages attributable to General Diesel's two percent negligence.

It is well-established that an indemnity agreement will not be construed to indemnify a party against the consequences of its own negligence unless that interpretation is clearly intended. *Vanderhoof v. Gravel Products, Inc., supra; Bridston v. Dover Corp., supra.*

In *Bridston, supra,* we held that an indemnity agreement[7] clearly required indemnification to a lessor for the consequences of its own acts. In that case the indemnity agreement stated that the lessee was to " 'indemnify and save harmless the

---

**6.** Because of our resolution of this issue, we do not address whether common law noncontractual indemnity is precluded by the North Dakota Workers Compensation Act.

**7.** That indemnity agreement provided:
" '22. INDEMNITY—PERMITEE
"agrees to conduct its activities upon the premises so as not to endanger any person lawfully thereon; and to indemnify and save harmless the UNIVERSITY against any and all claims for loss, injury or damage to persons or property including claims of employes [sic] of PERMITTEE or any contractor or subcontractor, arising out of the activities conducted by the PERMITTEE, its agents, members, or guests. The PERMITTEE shall be required to furnish satisfactory evidence of liability insurance, including a copy of the endorsement adding the UNIVERSITY as an additional insured. The limits of liability re-

quired are: Bodily injury liability $100,000 per person, $500,000 per occurance [sic], and $10,000 for property damage per occurance [sic]. PERMITTEE will not do, or permit to be done, anything in or upon any portion of the premises or bring or keep anything therein or thereon which will in any way conflict with the conditions of any insurance policy upon the building or any part thereof, or in any way increase any rate of insurance upon the building or on property kept there; nor shall PERMITTEE without the written consent of the UNIVERSITY put up or operate any engine or motor or machinery on the premises or use oils, burning fluids, camphene, kerosene, naptha or gasoline for either mechanical or other purposes or any agent other than electricity for illuminating the premises.' " *Bridston, supra,* 352 N.W.2d at 196.

[lessor] against any and all claims for loss, injury or damage to persons or property.' " *Bridston, supra,* 352 N.W.2d at 196. We noted that the agreement contained no language of limitation or qualification excepting claims arising from the lessor's negligence and construed the agreement as a promise to defend the indemnitee from all claims of third parties. More importantly, that indemnity agreement required the lessee to procure liability insurance, including an endorsement adding the lessor as an additional insured.

We distinguished *Bridston, supra,* on two grounds in *Vanderhoof, supra.* First, the indemnity clause in *Vanderhoof, supra,* established a conflict between a "hold harmless" clause and another provision of the lease and second, the indemnity clause did not include a provision for insurance. In *Vanderhoof, supra,* we held that reasonable arguments could be made in support of contrary interpretations of the lease, and we therefore concluded that summary judgment was inappropriate because factual issues existed about the intent of the parties.

In this case the lease does not require indemnification for "any and all claims," but for "liability arising out of the operation" of the crane. We believe that difference in language is significant. *Compare Bridston, supra.*

Although this indemnity clause also includes an insurance requirement, we believe the language of that clause is distinguishable from *Bridston, supra.* The first sentence of this "insurance" clause requires First Assembly "to keep said equipment insured under a contractor's ALL RISK form ... containing a loss payable clause in favor of" General Diesel. By its own terms that language requires insurance for damage to the crane and is not applicable to damages for personal injury.[8] The second sentence requires that "[s]atisfactory evidence of ... public and property damage liability coverage with minimum

limits of 250/500/250 will be furnished" to General Diesel. That language is distinguishable from *Bridston, supra,* because it does not require First Assembly to add General Diesel as an additional insured. As we stated in *Vanderhoof, supra,* that was a factor that we considered significant in *Bridston, supra.*

We do not believe that the lease agreement, when read in its entirety, reflects a clear intent that General Diesel be indemnified for its own negligence. Although in *Vanderhoof, supra,* we remanded for a factual determination of the parties' intent, in this case neither party has called our attention to any extrinsic evidence that would assist the lower court in determining the parties' intent. Under these circumstances we conclude that, by the terms of this lease agreement, General Diesel was not entitled to indemnity from First Assembly for General Diesel's own negligence, and we reverse that portion of the district court judgment requiring indemnification for General Diesel's two percent negligence.

First Assembly next asserts that the trial court erred in determining that General Diesel was entitled to $22,942.10 indemnification for attorney's fees and expenses in defending Barsness' action. First Assembly contends that because General Diesel is not entitled to indemnity for its own negligence, it is not entitled to indemnification for attorney's fees and expenses. General Diesel responds that it is entitled to indemnification for attorney's fees and expenses, citing *Hoge v. Burleigh County Water Management District,* 311 N.W.2d 23 (N.D.1981).

In *Hoge, supra,* we recognized the general rule that in the absence of contractual or statutory liability, attorney's fees are not recoverable. In *Hoge, supra,* 311 N.W.2d at 31, we held that an indemnitee was entitled to attorney's fees because it was the intent of the parties that the indemnitor would indemnify the indemnitee and "hold

---

**8.** A "loss payable clause" is a "provision in property insurance contracts that authorizes payments to persons other than the insured to the extent that they have an insurable interest in the

property." Black's Law Dictionary, Abridged Fifth Edition (1983); *see Cherokee Insurance Co. v. Koenenn,* 536 F.2d 585 (5th Cir.1976).

and save them harmless from *any* and *all* such damages." [Emphasis in original.] However, *Hoge, supra,* involved a more comprehensive indemnity clause than that under consideration here and did not involve whether an indemnitee should be indemnified for attorney's fees when it was required to defend against allegations of its own negligence. *Compare Conrad v. Suhr,* 274 N.W.2d 571, 578 (N.D.1979), in which we held that an indemnitee who defends against its own negligence may not recover attorney's fees because "[a]ny other rule would be not only unworkable, but would be inconsistent with the general rule that tort defendants, even if vindicated, must pay for their own defense."

 We conclude that the rule announced in *Conrad, supra,* governs this case because the lease between General Diesel and First Assembly does not require indemnification for General Diesel's own negligence. The rule in *Conrad, supra,* is even more persuasive in this case because the jury found General Diesel to be two percent negligent whereas in *Conrad,* the jury found the party seeking attorney's fees not negligent. We therefore conclude that General Diesel was not entitled to the $22,942.10 in attorney's fees and expenses in defending Barsness' action, and we reverse that part of the district court judgment.

On its cross-appeal General Diesel contends that it is entitled to attorney's fees and expenses incurred in bringing its motion for indemnification. It is well established that an indemnitee may not recover attorney's fees and expenses incurred to establish the existence of an obligation to indemnify unless the agreement explicitly says otherwise. *E.g., Peter Fabrics, Inc. v. S.S. Hermes,* 765 F.2d 306 (2d Cir.1985), and cases cited therein. The Second Circuit gave the following rationale for that rule:

"... such expenses are not by their nature a part of the claim indemnified against. Rather, they are costs incurred in suing for a breach of contract, to wit, the failure to indemnify. As such, fees and expenses incurred in establishing the indemnity obligation fall within the ordinary rule requiring a party to bear his own expenses of litigation, *see* Berger, *Court Awarded Attorneys' Fees: What is 'Reasonable'?,* 126 U.Pa.L.Rev. 281, 281 (1977). *Cf.* 5 Corbin, *Contracts* § 1037 (1964) (attorneys' fees and expenses may be recovered if they constitute damages from the breach of a contract but not if they are incurred in proving the breach)." *Peter Fabrics, Inc. v. S.S. Hermes, supra,* 765 F.2d at 316.

 We believe that rule is applicable to this action, and because this agreement does not explicitly provide otherwise, we affirm the district court's denial of attorney's fees and expenses to General Diesel for bringing the motion for indemnification.

The district court judgment is affirmed in part, reversed in part and remanded for entry of judgment consistent with this opinion.

ERICKSTAD, C.J., MESCHKE and VANDE WALLE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of LEVINE, J., disqualified.