Rebecca **BRIDSTON**, a minor by Margaret **BRIDSTON**, her Guardian Ad Litem, and Paul J. Bridston, Plaintiffs,

v.

**DOVER CORPORATION**, a foreign corp., Gust Lagerquist and Sons, Inc., a foreign corp., Twin City Construction Co., a ND corp., Wells, Denbrook, Adams, Wagner Architects, P.C., a ND professional corp., and the University of North Dakota, Defendants,

and

The **UNIVERSITY OF NORTH DAKOTA**, Third-Party Plaintiff and Appellee,

v.

The **YOUNG MEN'S CHRISTIAN ASSOCIATION**, d/b/a "Y Family Center", a corp., Third-Party Defendant and Appellant,

Judy Smith, Third-Party Defendant.

**Civ. No. 10614.**

Supreme Court of North Dakota.

July 11, 1984.

---

Cameron W. Hayden [argued], of O'Grady, Morley & Morley, Ltd., Grand Forks, for appellant Young Men's Christian Ass'n.

Carol E. Harrang [argued], of Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for appellee University of North Dakota.

GIERKE, Justice.

This is an appeal by the third-party defendant, Young Men's Christian Association [YMCA], from a summary judgment entered in the District Court of Grand Forks County in favor of defendant and third-party plaintiff, the University of North Dakota [UND]. We affirm.

On November 9, 1977, UND leased the Chester Fritz Auditorium to Judy Smith, an employee of the YMCA, for the purpose of presenting a dance performance by the "Judy Rae Dancers". The lease agreement, which was entitled "PERMIT" authorized the permittee to use and occupy the Auditorium from 8:00 a.m., on December 11, 1977, until 1:00 a.m., on December 12, 1977, for the sum of $500.00 plus expenses.

On December 11, Rebecca Bridston, one of the Judy Rae Dancers, was rehearsing for the dance performance scheduled for that evening. During the rehearsal, Ms. Bridston was injured when a UND employee raised the hydraulic stage lift on which she was standing.

As a result of her injuries, Ms. Bridston brought suit against a number of defendants, including UND. With regard to UND, the complaint alleged that a UND employee negligently raised the stage lift after being warned to stop and lower the lift. The complaint also alleged that UND was generally negligent. No allegations of negligence were made against either the YMCA or Judy Smith.

By summons and complaint, UND commenced a third-party action against the YMCA and Smith. The third-party complaint alleges that UND was entitled to indemnity by reason of contractual agreement. Again, there were no allegations of negligence on the part of YMCA or Judy Smith.

The YMCA and Smith interposed answers and moved for a partial summary judgment dismissing the third-party claim on the basis that there was no issue of material fact and that UND was not entitled to indemnity as a matter of law. The

trial court found that there was no issue of material fact but denied the motion.

A settlement was subsequently reached between Bridston and the defendants. The district court entered judgment of dismissal with prejudice in the main action but severed the third-party action. UND then presented its own motion for a summary judgment which was granted.

The issue raised in this appeal is whether or not the language contained in paragraph 22 of the lease agreement entitled "INDEMNITY" requires the YMCA and Smith to defend and indemnify the University of North Dakota for the consequences of its own alleged negligence.

Paragraph 22 of the lease agreement states as follows:

"22. INDEMNITY—PERMITTEE agrees to conduct its activities upon the premises so as not to endanger any person lawfully thereon; and to indemnify and save harmless the UNIVERSITY against any and all claims for loss, injury or damage to persons or property including claims of employes of PERMITTEE or any contractor or subcontractor, arising out of the activities conducted by the PERMITTEE, its agents, members, or guests. The PERMITTEE shall be required to furnish satisfactory evidence of liability insurance, including a copy of the endorsement adding the UNIVERSITY as an additional insured. The limits of liability required are: Bodily injury liability $100,000 per person, $500,000 per occurance [sic], and $10,000 for property damage per occurance [sic]. PERMITTEE will not do, or permit to be done, anything in or upon any portion of the premises or bring or keep anything therein or thereon which will in any way conflict with the conditions of any insurance policy upon the building or any part thereof, or in any way increase any rate of insurance upon the building or on property kept there; nor shall PERMITTEE without the written consent of the UNIVERSITY put up or operate any engine or motor or machinery on the premises or use oils, burning fluids, cam-

phene, kerosene, naptha or gasoline for either mechanical or other purposes or any agent other than electricity for illuminating the premises."

Ordinarily the construction of a contract to determine its legal effect is a question of law for the court. *Person v. Hass*, 273 N.W.2d 710 (N.D.1979). In construing the terms of a contract, the contract should be considered as a whole, "and every clause, sentence, or provision, should be given effect consistent with the main purpose of the contract". *Delzer Construction Company v. New Marian Homes Corporation*, 117 N.W.2d 851, 856 (N.D.1962). *See also* § 9–07–06 of the North Dakota Century Code. It is almost universally held that an indemnity agreement will not be interpreted to indemnify a party against the consequences of his own negligence unless that construction is very clearly intended. *See Prosser, Torts* 4th Ed. § 51, page 310, n. 90. As with any contract, the whole of the contract must be construed to give effect to every part. Each clause helps to intepret the others. § 9–07–06, N.D.C.C.

The YMCA contends that paragraph 22 fails to state clearly and unambiguously that UND is to be indemnified against the consequences of its own negligence. It is the YMCA's view that only language which expressly states such an intention should be given effect. Although an express provision stating that the indemnitee shall be held harmless for its own acts of negligence would undoubtedly be a good practice in the drafting of an indemnity agreement, we do not believe that the intention of the parties, as contained in the whole of the contract, must be disregarded because of the absence of some "magic words".

In *St. Paul Fire & Marine v. Amerada Hess Corp.*, 275 N.W.2d 304, 308 (N.D. 1979), we construed a similar indemnity provision which stated in part:

" '... [KBM Well Service] shall protect and defend Amerada against and indemnify and save it harmless from all liability, claims, demands and causes of action arising out of the execution and perform-

ance of work under this agreement. This indemnity agreement by ... [KBM Well Service] shall be insured by ... [KBM Well Service] with insurers and in amounts satisfactory to Amerada, ...'"

In construing this provision we stated that: "The term 'save harmless' has been defined as a 'guaranty' or promise to 'indemnify'. See *Bausman v. Credit Guarantee Co.*, 47 Minn. 377, 379, 50 N.W. 496 (1891). A reasonable interpretation of the 'save harmless' provision ... is that KBM agrees to 'protect' and 'defend' Amerada from claims of third parties. The save-harmless provision does not shield Amerada from contract claims of KBM but, instead, assures to Amerada that KBM will defend Amerada from third-party claims. *The requirement that KBM obtain property insurance in amounts satisfactory to Amerada provides further assurance to Amerada of indemnity from KBM in the event an action is brought against Amerada for the negligent acts of either or both Amerada and KBM.*" [Emphasis added.]

▮ Similarly, our review of this contract in general and paragraph 22 in particular leads us to conclude that it was the intention of the parties that UND should be indemnified against a liability arising from its own acts of negligence. We reach this conclusion for the following reasons:

First, the indemnity agreement contains the "save harmless" language which we have previously construed as a promise to protect and defend the indemnitee from all claims of third parties. *St. Paul Fire & Marine v. Amerada Hess Corp., supra.* Similar language is contained in paragraph 13 of the contract ("... the University is hereby expressly relieved and discharged from any and all liability for any loss, injury or damage to persons or property that may be sustained by reason of the occupancy of said building ...").

Second, the clause clearly states that UND is to be saved harmless *"against any and all claims for loss, injury or damage"*. There is no language of limitation or qualification excepting claims arising from UND's negligence. Nor does the paragraph contain any provision limiting indemnity to those claims against UND which might arise from YMCA's acts of negligence.

Third, the indemnity paragraph contains a specific provision that YMCA procure liability insurance, including an endorsement adding UND as an additional insured. The provision also specifically sets forth minimum limits of liability to be insured against. There could be no purpose for the insurance provision other than to protect UND from the consequences of its own negligent acts. YMCA's interpretation would render this requirement mere surplusage because, even without the insurance provision, UND would be entitled to restitution for any damages it might incur as a result of its vicarious liability for YMCA's acts of negligence. The requirement that the YMCA obtain liability insurance in an amount satisfactory to UND is clearly meant to provide further assurance to UND of indemnity from the YMCA in the event an action is brought against the UND for the negligent acts of either or both UND and YMCA. *St. Paul Fire & Marine v. Amerada Hess Corp., supra.*

Finally, the permit contains 22 numerated paragraphs under the heading "TERMS AND CONDITIONS OF PERMIT". These paragraphs, when read together, reflect the unmistakable intent of the parties that, in exchange for the use of the facility, UND would be protected from any liability arising from that use. See *Bonner County v. Panhandle Rodeo Ass'n*, 101 Idaho 772, 620 P.2d 1102 (Cir.1980).

For the reasons expressed in the opinion, the judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.