Kenneth R. STEFFL and Adella Steffl, Husband and Wife, Appellees,

v.

J.I. CASE COMPANY, a Wisconsin Corporation d/b/a Case Power & Equipment, Appellant,

v.

HORIZON CONSTRUCTION, INC., Appellee.

Nos. 87–5460, 87–5461.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1988.

Decided Dec. 6, 1988.

Michael F. Daley, Grand Forks, N.D., for appellant.

Jay H. Fiedler, Grand Forks, N.D., for Horizon.

Richard A. Ohlsen, Grand Forks, N.D., for Steffl.

Before WOLLMAN and BEAM, Circuit Judges, and LARSON,* District Judge.

BEAM, Circuit Judge.

The J.I. Case Company (Case) appeals from an order of the district court that found in favor of Kenneth Steffl and the Horizon Construction Company. The court's order and memorandum opinion were issued after hearing testimony and viewing exhibits during the course of a four day non-jury trial. We affirm, but, in part, on different grounds than those advanced by the district court.

## I. BACKGROUND

Case is a manufacturer of the Case Uni-loader model 1830. Known generically as a skid steer, the Uni-loader is a compact machine designed to work in tight spaces. It functions, in effect, as a power shovel.

Steffl had leased a Uni-loader on April 27, 1976 from Case[1] on behalf of his employer, Horizon Construction. He drove the Uni-loader to the work site. His assistant, Dan Skelly, used the Uni-loader to scoop up sand from one pile, and to deposit it at locations indicated by Steffl. At one point, while an attempt was being made to place the sand at a designated spot, the Uni-loader tipped forward. In the process, the bucket of the Uni-loader trapped Steffl's foot against a wall. The foot was injured and has since been amputated.

Steffl sued Case, alleging among other things, that the Uni-loader was unreasonably dangerous because there were no decals on the machine that warned users and bystanders that the Uni-loader had a propensity to overturn when discharging loads above a certain weight. The district court agreed and found that Steffl was entitled to judgment under a theory of strict liability in tort.

Case cross-claimed against Steffl's employer, Horizon Construction. Case sought to have Horizon indemnify Case against any liability to Steffl—Case's claim being that under the lease entered into between Horizon and Case, Horizon had assumed all risk and liability arising from the use of the Uni-loader. The district court, however, found that the indemnity provision did not cover strict liability claims, and also, found that the provision, if applicable, was unconscionable. Case appeals.

## II. STRICT LIABILITY

Section 402A of the Restatement of Torts (Second) states that:

(1) One who sells[2] any product in a defective condition unreasonably dangerous to the user or consumer * * * is subject to liability for physical harm thereby caused to the ultimate user or consumer * * * if

\* \* \* \* \* \*

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The lease was with Case Power and Equipment of Grand Forks, North Dakota. The district court determined that Case Power and Equipment was a part of Case, the manufacturer of the loader.

2. Strict liability also applies in the lease of goods, *see Cintrone v. Hertz Truck Leasing & Rental Serv.,* 45 N.J. 434, 212 A.2d 769 (1965), particularly in cases where the lessor is also the manufacturer, *see* 2 L. Frumer & M. Friedman, *Products Liability* § 3.03[4], at 3–427 (1987).

(2) The rule * * * applies although

 (a) the seller has exercised all possible care in the preparation and sale of his product.

Comment (j) to this section states that "[i]n order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use." Restatement of Torts (Second), § 402A, comment (j).

North Dakota has expressly adopted section 402 A. *Olson v. A.W. Chesterton Co.,* 256 N.W.2d 530, 534 (N.D. 1977). Similarly, it applies comment (j). *See id.* at 535. In order to prevail, Steffl had to show that without a warning to nonoperating users of the Uni-loader's propensity to tip when carrying a heavy load, the product was unreasonably dangerous "to an extent beyond which would be contemplated by the ordinary and prudent" user of the product considering the product's characteristics and any actual knowledge possessed by that particular buyer, user, or consumer. *See Wilson v. General Motors Corp.,* 311 N.W.2d 10, 15 (N.D.1981) (citing N.D. Cent. Code § 28–01.1–05).

The question before us, therefore, is whether the district court was clearly erroneous in finding that the danger posed was beyond that which an ordinary and prudent user would expect, and was also beyond that which Steffl should have expected, given his knowledge of the machine, and the machine's characteristics. *See* Fed.R. Civ.P. 52(a). We believe the trial court was not clearly erroneous.

Initially, we note that despite a propensity of the machine to tip, there is nothing about the appearance of the machine to suggest to a user giving directions to an operator that it tends to tip forward when dumping its load. *See* plaintiff's exh. 8C. Only experience would suggest otherwise. *See* transcript at 680–81 (testimony of Case witness that after people learn that the machine tips, they then correct themselves). .

■ We also believe that under section 402A the characteristics of the Uni-loader require that Steffl's status as a nonoperating user giving directions to the operator is the same as that of an operating user. James Bauer, a Case witness, testified that when the Uni-loader's bucket is raised toward the horizontal position, the vision of the driver is obstructed. Transcript at 676. It was, thus, a standard practice for other workers to give directions to the driver as he or she operated the machine. *See id.* at 677.

In this case, the bucket was being raised toward the horizontal position to achieve a dumping posture at the time the Uni-loader tipped forward and contacted Steffl's foot. Thus, the record supports the conclusion that an ordinary and prudent user, without knowledge of the machine's propensity to tip under such circumstances, could reasonably have been in the same position as Mr. Steffl.

■ Case nevertheless contends that the district court erred by not finding that Steffl, through his prior experience in *operating* the Uni-loader, had personal knowledge of the machine's propensity to tip when emptying a load. Therefore, according to Case, Steffl voluntarily and unreasonably proceeded to face a danger known to him. While we agree with Case that this might preclude liability were it true, *see Olson,* 256 N.W.2d at 537, the record supports the district court's holding.

Steffl had rented a Uni-loader on February 2, 1975, and again on January 28, 1976. The machine was used by other drivers for seven days without incident. Transcript at 29–31. However, Steffl did operate the machine himself during the January 1976 rental. While raising a load of dirt to dump it, it tipped forward and he fell out of the cab. *Id.* at 35.

In order to explain the evidentiary support for the court's holding, two capacity ratings must be discussed, "tipping load" and "carrying load." The weight of a tipping load is measured with the bucket fully extended from the body of the Uni-loader. *Id.* at 514. The carrying load is measured with the bucket near the body of the loader and elevated about one foot above the ground. *Id.* at 497. *See also* plaintiff's exhibits 8C and 8G. The carrying load is

greater than the tipping load. *See id.* at 515. Steffl's earlier experience with tipping apparently came when he lifted a load of dirt higher than the fully extended horizontal position and markedly higher than the carrying position. *See id.* at 35–36.

On the day in question, the Uni-loader was used for several hours without incident. It was being used to establish an eight-inch-deep layer of sand inside a building.

An analysis of exhibits 8C and 8G, and the testimony of the plaintiff, transcript at 45–60, indicates that at the time of the accident the machine approached Steffl at a carrying position. As the bucket was being raised and extended toward a dumping position, it suddenly tipped onto plaintiff. Case established that the dumping height was 36 to 40 inches. *See id.* at 499. Since Steffl had only experienced tipping when the bucket was at that height or higher, it is reasonable for the trier of fact to conclude that Steffl did not know that the Uni-loader could or would tip the instant that a load was being raised from the carrying position toward the dumping position. Other factors that the defense sought to prove as causes of the machine tipping were not causes that Steffl had previously observed. *See id.* Given this evidence, we affirm the district court's holding that Case was strictly liable for failing to warn nonoperating users about the machine's propensity to tip.

## III. LEASE AGREEMENT

As indicated, Case and Horizon entered into a lease agreement on April 27, 1976. Paragraph 8 of the agreement included a provision of indemnification whereby Horizon would indemnify Case for the consequences arising out of the use or "because" of the Uni-loader. The district court found that Paragraph 8 was unconscionable, and that it did not apply where blameworthiness is reached under a strict liability theory.

### A. Unconscionability

On the question of unconscionability, we note that unconscionability is seldom found in contracts between commercial parties unless there is both impropriety in the negotiations and substantive unfairness in the contract term sought to be enforced. *See* White and Summers, Uniform Commercial Code, Sec. 4–9, at 172–73 (1980); *cf. Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 266–69 (E.D.Mich.1976) (after reviewing similar cases where there had been elements of both procedural and substantive unfairness, the court found contract both substantively and procedurally unconscionable).

In the case before us, we do not believe the language of the lease agreement included a term which required the indemnification that Case seeks. Thus, the issue of unconscionability is not relevant and we will disregard the finding of unconscionability, especially given the commercial context of this case.

### B. Construction of Paragraph 8

Paragraph 8 reads, in part, as follows:
8. LESSEE ASSUMES ALL RISK AND LIABILITY for and agrees to indemnify, save and hold LESSOR and manufacturer harmless from * * * all loss, damage, claims, penalties, liability and expenses including attorney's fees howsoever arising or incurred because of the Equipment or the storage, use or operation thereof.

It is Case's contention that under North Dakota law, the only relevant inquiry is whether Steffl's injury arose out of the use or because of the machine. It relies upon *Bridston By Bridston v. Dover Corp.*, 352 N.W.2d 194 (N.D.1984). We disagree.

In *Bridston*, the North Dakota Supreme Court considered similar language. The agreement provided that the University of North Dakota was to be indemnified and saved harmless for "all claims for loss, injury or damage to persons or property * * * arising out of the activities conducted by the [indemnitor]." The court considered whether the agreement applied to indemnification of the University for a claim arising from the University's own negligence. *See id.* at 196. It applied the usual rule

that an indemnity agreement will not be so construed unless such a construction was clearly intended. *See id.; see also Peter Kiewit Sons Co. v. O'Keefe Elevator Co.,* 191 Neb. 50, 52, 213 N.W.2d 731, 732 (1974).

The court analyzed the language of the indemnity provision, *see Bridston,* 352 N.W.2d at 196, as well as other provisions not reproduced in its opinion, *see id.* at 197, and found that it was the unmistakable intent of the parties that the University be protected from its own negligence.[3] *See id.; see also* N.D.Cent.Code § 9-07-13 (stating that however broad the terms of the contract, it extends only to those things about which it appears that the parties intended to contract). The question before us is whether the parties intended indemnification for consequences arising out of strict products liability actions. We do not think such was intended.

We agree that under *Bridston* it is at least arguable that Case is entitled to indemnification for its own negligence arising out of the use of the loader. And, if only vicariously liable, it is probable that it is entitled to indemnification for loss incurred as a result of Horizon's negligence. However, this case is not about anyone's negligence. Recovery by the plaintiff is predicated upon the furnishing, by Case, of a defective and unreasonably dangerous product. Thus, Case must show that under the lease, Horizon agreed to, in effect, insure it for liability arising out of the furnishing of a defective product. Giving the words "because of the equipment" or "use or operation thereof" the best spin possible for Case, the language simply does not stretch far enough to form a products liability insurance agreement for the benefit of Case.

■ Neither party has pointed to a case where a court has found that similar lease language extends indemnification for strict products liability claims. We have also been unsuccessful in finding any such decisions.

We see no reason not to find indemnification when a products liability theory, rather than a negligence theory, provides the basis for recovery. When the contract clearly and unambiguously provides for such protection, courts have generally required indemnification. *See Beloit Power Sys. v. Hess Oil Virgin Island,* 757 F.2d 1427 (3d Cir.1985); *Berry v. Ponte & Sons,* 166 N.J. Super 513, 400 A.2d 114 (App.Div.1979). Indeed, it is argued, with some force, in *Berry v. Ponte & Sons,* that more general language should suffice to extend indemnity under a products theory because negligence connotes a modicum of active culpability whereas strict liability in tort is established through more benign acts.

Nonetheless, we believe, as a policy matter, that the nature of strict products liability cautions against easily inferring that parties intend to shift such risk. Strict liability is grounded in the notion that by marketing its product, the manufacturer has undertaken and assumed a special responsibility toward using and consuming individuals, and that the public has a right to, and does expect, that a reputable manufacturer will stand behind its goods. *See* Restatement of Torts (Second), Sec. 402 A, comment (c), at 349–50.

Thus, we find that the language employed in the Case–Horizon contract is not complete or specific enough to require Horizon to indemnify its lessor. *See, e.g., Sorrentino v. Waco Scaffolding,* 44 Ill. App.3d 1055, 3 Ill.Dec. 559, 358 N.E.2d 1244 (Ill.App.Ct.1976); *Widson v. International Harvester,* 153 Cal. App. 3d 45, 200 Cal.Rptr. 136 (Cal.Ct.App.1984); *Price v. Shell Oil,* 2 Cal. 3d 245, 85 Cal.Rptr. 178, 466 P.2d 722 (1970).

IV. CONCLUSION

For the reasons outlined in this opinion, we affirm the order of the district court finding J.I. Case liable to Kenneth R. Steffl and Adella Steffl.[4] On Case's indemnifica-

---

**3.** A University employee had negligently moved the stage while Bridston was rehearsing on property leased from the school by the indemnitor for a dance performance.

**4.** Appellee contends that this court should impose Fed.R.Civ.P. 11 sanctions on appellant Case for its appeal on the issue of liability. It is doubtful that Rule 11 is applicable since Fed.R.

tion action against Horizon, we affirm the court's order finding that the agreement does not require Horizon to indemnify Case for strict liability claims relating to its own products. Given our decision on the indemnification question, we need not address whether or not the lease agreement waived Horizon's claim of statutory immunity under the North Dakota worker's compensation statute.

Accordingly, the order of the district court is affirmed.

LARSON, Senior District Judge, concurring.

I fully concur in the result reached by the court in this case. In Part III, the court refuses to require Horizon, as lessee, to indemnify Case, as manufacturer and lessor of the Uni-loader, for liability imposed on Case under a strict liability theory. The court finds the language of the lease agreement drafted by Case is not specific enough to form a products liability insurance agreement for the benefit of Case. I agree with this construction of the lease agreement.

I write separately because more careful drafting would not be enough, in my view, to require indemnification by Horizon under the circumstances of this case. While the majority does not explicitly state as much, language in its opinion—unnecessary to the decision reached today—may be read to infer that a clear and unambiguous contract providing for products liability indemnification would be enforced. *See* opinion at 696, *supra.* Of course, we have no such clause before us.

Moreover, the lease agreement in this case was a pre-printed, non-negotiable form contract. The individual who signed the form on behalf of Horizon was a construction worker who had an eighth grade education and who sought to rent the Uni-loader for a limited time only for use on a particular job site. Under these circumstances, the district court, applying North Dakota law, held unconscionable a provision which purported to shift liability for an unreasonably dangerous and defective product from a *manufacturer* to a mere lessee. I am not prepared to hold that more clear language on the back of a pre-printed, non-negotiable, unexplained lease form would, or should, change this result.

Civ.P. 1 indicates that the civil procedure rules govern practice in United States *District* Courts. Federal Rule of Appellate Procedure 38 may provide the basis for relief from frivolous appeals. However, this is clearly not a matter in which sanctions should be considered.