Kevin RUPP, Plaintiff,

v.

AMERICAN CRYSTAL SUGAR COM-
PANY, a corporation, Defendant,
Third–Party Plaintiff and Appellee,

v.

GREENBERG ROOFING AND SHEET
METAL COMPANY, a corporation,
Third–Party Defendant and Appellant.

Sterling J. ROMFO, Sr., Plaintiff,

v.

AMERICAN CRYSTAL SUGAR COM-
PANY, a corporation, Defendant,
Third–Party Plaintiff and Appellee,

v.

GREENBERG ROOFING AND SHEET
METAL COMPANY, a corporation,
Third–Party Defendant and Appellant.

Civ. Nos. 900110, 900111.

Supreme Court of North Dakota.

Jan. 16, 1991.

Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, for defendant, third-party plaintiff and appellee; argued by Gregory Lee Wolsky.

McConn, Fisher, Olson & Daley, Grand Forks, for third-party defendant and appellant; argued by Michael F. Daley.

GIERKE, Justice.

Greenberg Roofing and Sheet Metal Company (Greenberg) has appealed from an indemnification judgment in favor of American Crystal Sugar Company (American). We affirm in part, reverse in part, and remand for entry of an amended judgment.

Kevin Rupp and Sterling Romfo fell approximately 60 feet when a section of metal decking gave way while they were working as Greenberg employees on a re-roofing project at American's Drayton plant. Romfo was killed and Rupp was rendered paraplegic. Suits were brought against American for damages resulting from the death and injury of Romfo and Rupp. Relying on indemnity provisions in its construction agreement with Greenberg, American tendered defense of the suits to Greenberg and its insurer. Greenberg's insurer rejected the tender of defense. American then brought third-party actions against Greenberg, alleging a contractual right to indemnity for any sums that might be adjudged against American in the Romfo and Rupp actions against American.

American paid $600,000 in settling the Rupp suit and $24,000 in settling the Romfo suit. The district court granted American's motion for summary judgment of in-demnity and awarded American $666,-622.85. Greenberg appealed, raising issues with regard to whether or not American was to be indemnified for the consequences of its own negligence; the district court's consideration of Greenberg's insurance policies; the measure of damages applied by the district court; and the district court's award of costs and attorney fees American incurred in establishing the existence of a right to indemnity.

Greenberg and American contracted for the re-roofing of an American building. The contract provided in part:

"INSURANCE CLAUSE

"The CONTRACTOR with whom this purchase order is placed shall carry liability insurance as follows: Property Damage liability coverage with XCU exclusion removed and limits of not less than $500,000 aggregate per occurrence for personal injury, bodily injury, death, and of not less than $250,000 for property damage liability. If per person limits are specified, they shall be for not less than $250,000 per person and be for the same coverages.... *LIABILITY coverages shall include:* CONTRACTOR'S public liability—premises and operations, including elevator, if any; CONTRACTOR'S and OWNER'S protective contingent liability; Personal injury: OWNED, non-owned and hired vehicles; Contractual liability covering the hold harmless agreement contained herein and this construction order; Products and completed operations coverage....

\* \* \* \* \* \*

"Certificates of insurance acceptable to the OWNER and in which the OWNER is named as additionally insured, shall be filed with the office manager at our factory where this work will be performed as shown above prior to commencement of the work....

"*HOLD HARMLESS*

"The CONTRACTOR agrees to pay on behalf of and hold harmless American Crystal Sugar Company, OWNER, its directors, officers, and employees from all loss, costs, damage and/or expense aris-

ing out of any demand, claim, suit or judgment for damages or injuries to any person, firm or corporation whatsoever ... or for the death of any person, or for injury or damage to property (including but not limited to adjoining and adjacent property, buildings, driveways, walks, yards) caused or alleged to have been caused by the CONTRACTOR or any of CONTRACTOR'S subcontractors, or the employees or agents of either or any of them in connection with work performed by reason of this order."

Greenberg argues that the hold harmless clause limits indemnity to damages caused by Greenberg and does not cover damages caused by American's own negligence and that the district court erred in not considering the parties' prior course of dealing in construing the ambiguous contract.

"It is almost universally held that an indemnity agreement will not be interpreted to indemnify a party against the consequences of his own negligence unless that construction is very clearly intended." *Bridston v. Dover Corp.*, 352 N.W.2d 194, 196 (N.D.1984). *See also, Barsness v. General Diesel & Equipment Co., Inc.*, 422 N.W.2d 819 (N.D.1988); *Vanderhoof v. Gravel Products, Inc.*, 404 N.W.2d 485 (N.D.1987).

In *Bridston, supra*, the YMCA leased the Chester Fritz Auditorium from the University of North Dakota to present a dance performance. Paragraph 22 of the lease provided:

" '22. INDEMNITY—PERMITTEE agrees to ... indemnify and save harmless the UNIVERSITY against any and all claims for loss, injury or damage ... arising out of the activities conducted by the PERMITTEE, its agents, members, or guests. The PERMITTEE shall be required to furnish satisfactory evidence of liability insurance, including a copy of the endorsement adding the UNIVERSITY as an additional insured.' "

352 N.W.2d at 196. A dancer was injured when a UND employee raised the hydraulic stage lift on which she was standing. The YMCA argued that UND was not entitled to indemnification because "paragraph 22 fails to state clearly and unambiguously that UND is to be indemnified against the consequences of its own negligence." *Id.*, at 196. We held that the parties intended that UND be indemnified for liability arising from its own negligence for, among others, the following reasons:

"Second, the clause clearly states that UND is to be saved harmless *'against any and all claims for loss, injury or damage'*. There is no language of limitation or qualification excepting claims arising from UND's negligence. Nor does the paragraph contain any provision limiting indemnity to those claims against UND which might arise from YMCA's acts of negligence.

"Third, the indemnity paragraph contains a specific provision that YMCA procure liability insurance, including an endorsement adding UND as an additional insured. The provision also specifically sets forth minimum limits of liability to be insured against. There could be no purpose for the insurance provision other than to protect UND from the consequences of its own negligent acts.... The requirement that the YMCA obtain liability insurance in an amount satisfactory to UND is clearly meant to provide further assurance to UND of indemnity from the YMCA in the event an action is brought against the UND for the negligent acts of either or both UND and YMCA." (Citation omitted.)

352 N.W.2d at 197.

In *Vanderhoof v. Gravel Products, Inc.*, 404 N.W.2d 485 (N.D.1987), we held that the trial court erred in determining that a hold harmless clause clearly and unambiguously provided indemnification for the consequences of the lessors' own acts. We distinguished *Bridston:*

"[T]he indemnity clause in *Bridston* included a requirement that the lessee procure liability insurance in specified amounts naming the lessor as an additional insured. That requirement was particularly significant to our conclusion that the agreement was intended by the parties to indemnify the lessor for its own acts: 'There could be no purpose for

the insurance provision other than to protect [the lessor] from the consequences of its own negligent acts.' *Bridston v. Dover Corp., supra,* 352 N.W.2d at 197." *Vanderhoof, supra,* 404 N.W.2d at 492.

In *Barsness v. General Diesel & Equipment Co., Inc., supra,* 422 N.W.2d at 826, we again distinguished *Bridston:*

"The second sentence [of the insurance clause] requires that '[s]atisfactory evidence of . . . public and property damage liability coverage with minimum limits of 250/500/250 will be furnished' to General Diesel. That language is distinguishable from *Bridston, supra,* because it does not require First Assembly to add General Diesel as an additional insured. As we stated in *Vanderhoof, supra,* that was a factor that we considered significant in *Bridston, supra.*"

▋ The hold harmless provision in this case, as in *Bridston,* contains language requiring one party to carry liability insurance with specified minimum limits and to name the other party as additionally insured. Here, as in *Bridston,* "[t]here could be no purpose for the insurance provision other than to protect [American] from the consequences of its own negligent acts." 352 N.W.2d at 197. Construing the hold harmless and insurance provisions together, we conclude that the parties clearly intended that American would be indemnified against the consequences of its own negligence. We further conclude that the district court did not err in refusing to consider extrinsic evidence of the parties'

course of dealing in construing the agreement.[1]

The district court construed Greenberg's liability insurance policies and determined that "the certificate of insurance which we have been dealing with does satisfy the terms of the contract in that, . . . [it] has all the effect of actually naming them as an additional named insured through the incidental contract coverage provisions." In ruling on Greenberg's motion to amend the findings, conclusions, order for judgment, and judgment, the district court declared that "American Crystal Sugar was an additional named insured." Thus, the district court determined, based upon generalized provisions,[2] that American was an additional insured under Greenberg's liability insurance policies even though it had not been specifically named in the policies, and that Greenberg's policies complied with the contractual requirement that Greenberg provide certificates of insurance naming American as additionally insured.

▋ Without disputing the correctness of the district court's construction of the insurance policies, Greenberg contends that the district court should not have considered the insurance policies because the issue of whether Greenberg had insurance coverage which might satisfy a judgment for American against Greenberg was not raised and Greenberg's insurers were not parties to the action. This contention was raised in Greenberg's brief in support of its motion to amend. The district court observed that "Mr. Daley has acknowledged that his retention is by CNA in behalf of

---

1. Greenberg wanted the district court to consider the parties' course of dealing, indicating that on several previous roofing projects, the certificates of insurance that Greenberg provided American "had always been 'certificates of insurance acceptable to the OWNER', although the OWNER was never 'named as additionally insured' on any of these certificates," thus raising a material issue of fact with regard to whether the parties intended that American be indemnified against the consequences of its own negligence. However, the district court determined that Greenberg's liability policy did cover American as an additional insured, even though American was not specifically "named as additionally insured."

2. The trial court relied upon such generalized policy provisions as the following:
   "This insurance does not apply:
   "(a) to liability assumed by the *Insured* under any contract or agreement except an *Incidental Contract;* but this exclusion does not apply to a warranty of fitness or quality of the *Named Insured's Products* or a warranty that work performed by or on behalf of the *Named Insured* will be done in a workmanlike manner;
      *    *    *    *    *    *
   "*A. CONTRACTUAL LIABILITY COVERAGE*
   "(1) The definition of *Incidental Contract* is extended to include any contract or agreement relating to the conduct of the *Named Insured's* business."

Greenberg Roofing,"[3] and stated that "it was Mr. Daley speaking in behalf of his client in a representative capacity who brought in the Contract of Insurance for discussion." The court determined that it was appropriate to construe Greenberg's insurance policies because "the lack of coverage had been argued by Mr. Daley in defense of Greenberg," the insurance policies had "been introduced by Mr. Daley on behalf of the Greenberg Roofing Company," and Mr. Daley did not object to consideration of the policies on the ground that the insurers were not parties to the action. In Greenberg's return to American's motion for summary judgment, Greenberg's attorney stated:

"As is clear from the language drafted by American Crystal, as well as the Affidavits of Mark E. Paulson and Mark S. Jackson attached hereto, American Crystal has failed to support its claim for indemnity for its own acts of negligence and American Crystal's Motion for Summary Judgment should be denied. The Motion for Summary Judgment of Greenberg Roofing should be granted."

The affidavit of Mark E. Paulson, an officer of the insurance agency for Greenberg, stated that American "was never named on a Certificate of Insurance as an additional insured on any Greenberg Roofing project until ... June of 1985, the year following the year of Rupp and Romfo's accident," and was accompanied by copies of Greenberg's liability insurance policies. In light of the foregoing considerations, we are not persuaded that the district court erred in considering the provisions of Greenberg's liability insurance policies.

The district court ordered Greenberg to indemnify American in the amount of the $600,000 American paid in settling the Rupp suit and the $24,000 American paid in settling the Romfo suit. Greenberg argues

that the district court applied the wrong measure of damages:

"The damages for breach of an agreement to furnish insurance is the loss sustained by reason of its breach, in the amount which would have been due under the policy had it been obtained. *Robinson v. Janay*, [105 N.J.Super. 585], 253 A.2d 816, 819 (N.J.App.1969) and cases cited therein. Since the American Crystal Construction Contract called for bodily injury liability limits of $250,000.00 per person and $500,000.00 per occurrence, the measure of damages for a breach in this case would be a maximum of $274,-000.00."

The district court determined that the parties' construction contract did not limit the amount of insurance coverage that Greenberg could provide, but stated only the minimum coverage limits required and that American could be indemnified in higher amounts if Greenberg secured higher coverage limits.

■ Greenberg's argument is based on the premise of a "breach of an agreement to furnish insurance." The district court, however, did not determine that Greenberg breached an agreement to furnish insurance. As we have already noted, the district court determined that Greenberg secured liability insurance policies covering American as an additional insured and complying with its agreement with American. Greenberg secured liability insurance with a limit of $500,000 per occurrence and umbrella coverage of $3,000,000 per occurrence. The district court determined that American should benefit from the coverage Greenberg actually secured rather than be limited to the minimum coverage required by the construction contract. We do not believe that American is entitled to be indemnified by Greenberg[4] in an amount higher than the minimum insurance coverage that it required Greenberg to provide.

---

**3.** Daley was Greenberg's attorney and CNA was Greenberg's insurer.

**4.** Greenberg's insurers are not parties to this litigation and we express no view on the merits of any claim that American may have against Greenberg's liability insurer or that Greenberg may have against its insurers under its liability

insurance policy or its umbrella policy. We conclude only that, pursuant to the parties' hold harmless and insurance provisions in their construction agreement, American is not entitled to be indemnified by Greenberg in an amount exceeding the minimum liability limits required by their construction agreement.

We therefore conclude that the district court erred in ordering indemnity in an amount exceeding the minimum liability limits required by the parties' construction agreement, but within the limits of the liability insurance policies actually secured by Greenberg.

 Greenberg contends that the district court erred in allowing American to recover from Greenberg the expenses and attorney fees American incurred in establishing its claim for indemnification. We agree. "It is well established that an indemnitee may not recover attorney's fees and expenses incurred to establish the existence of an obligation to indemnify unless the agreement explicitly says otherwise." *Barsness v. General Diesel & Equipment Co., Inc., supra,* 422 N.W.2d at 827.[5] American's reliance on cases such as *Farmland Mut. Ins. Co. v. Farmers Elevator, Inc.,* 404 N.W.2d 473 (N.D.1987) for the proposition that an insurer may be required to pay its insured's attorney fees in a coverage dispute over the insurance company's duty to defend is misplaced. Greenberg was not American's insurer and this suit is not a coverage dispute between an insurer and its insured over the insurer's duty to defend its insured. We conclude that the district court erred in ordering Greenberg to pay American for the expenses and attorney fees American incurred in establishing Greenberg's obligation to indemnify American.

For the reasons stated, the judgment is affirmed insofar as it provides for Greenberg's indemnification of American, reversed insofar as it orders indemnity in an amount exceeding the minimum liability limits required by the parties' construction agreement, reversed insofar as it requires Greenberg to pay the expenses and attorney fees incurred by American in establishing its claim for indemnification, and remanded for entry of an amended judgment in accordance with this opinion.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

5. This is not a case like *Hoge v. Burleigh County Water Mgt. Dist.,* 311 N.W.2d 23 (N.D.1981), where indemnitees were allowed to recover attorney fees because they were impliedly included in the indemnity agreement and to hold otherwise would dilute the indemnitees' recovery for damages to their property as a result of a flood control project.