LaMarr MYERS and Nancy Myers,

v.

ANR PIPELINE COMPANY, Appellee,

ALLIED SIGNAL CORPORATION, a Delaware corporation,

v.

E–CON, INC., Appellant.

No. 91–1513.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1991.

Decided March 27, 1992.

Thomas Olson, Moorhead, Minn., argued (Erik Askegaard, on brief), for appellant.

Randall Bakke, Bismarck, N.D., argued, for appellee.

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

E–CON, Inc. appeals the district court's decision to award ANR Pipeline Company attorneys fees and costs pursuant to a contractual agreement between the two parties. We affirm, although we modify the amount awarded to ANR.

## BACKGROUND

Throughout 1983, the Great Plains Coal Associates, a consortium of several coal and gas companies, employed ANR Pipeline Company to design and construct a gas metering station in Hebron, North Dakota. In turn, ANR subcontracted with E–CON, Inc. to install the metering station's electrical equipment and wiring. As part of its duties, E–CON installed a chromatograph, or gas analyzer, which was manufactured by Allied Signal Corporation, then known as Bendix. E–CON finished working on the metering station in September 1983.

On July 19, 1984, an explosion at the metering station killed one person and injured two others. Two of the victims brought suit against ANR, alleging that it negligently designed the metering station, and against Allied Signal, alleging that it provided a dangerous and defective gas analyzer.[1] After discovery revealed that the personal injury plaintiffs intended to prove that the improper installation of the gas analyzer contributed to the explosion, ANR moved to file a third-party complaint against E–CON demanding both contribution and indemnification for attorneys fees and costs incurred while defending the personal injury suits. ANR based its indemnity claim against E–CON on the contract it entered into with E–CON regarding the construction of the metering station.

This case turns on that contract's indemnity and insurance provisions. The critical indemnity provisions provide:[2]

*Article XVI INJURIES AND DAMAGES*

2. E–CON assumes entire responsibility and liability and agrees to indemnify and hold harmless ANR for loss or damage sustained ... as a result of E–CON's operations hereunder and agrees to pay all ... costs and expenses, including attorney's fees, arising or allegedly arising in any way out of the performance of Work hereunder by E–CON ... including but not limited to the following:

(a) All injuries to persons (including fatal injuries);

. . . .

4. It is further agreed that E–CON shall defend, in the name and on behalf

---

1. The victims also filed claims against other companies who are not involved in this matter.

2. To facilitate the presentation of the contractual clauses, we have substituted "E–CON" and "ANR" where appropriate and have deleted superfluous language.

of ANR, any and all suits or claims against said parties seeking to recover damages on account of any injury ... caused by any act or omission with respect to the Work on account of which E–CON has hereinabove agreed to hold harmless, protect and indemnify ANR, even if such suit is groundless, ... and shall also pay the fees of counsel ANR shall deem it necessary or desirable to employ in connection therewith. ANR shall have the right, if it so elects, to take an active part in the defense of any such suit, and to file intervention or other similar proceedings therein if it deems such action desirable....

The insurance provisions explain, in pertinent part:

*Article XVII  INSURANCE*

1. To protect E–CON against liability for damage, ... arising in any way out of ... [E–CON's] Work, on account of which E–CON has as set forth in Article XVI of these General Conditions, agreed to hold harmless, protect and indemnify ANR, E–CON shall at all times during the progress of the Work carry ... the following minimum insurance coverages:

(c) *Comprehensive General Public Liability Insurance*

Comprehensive General Public Liability Insurance with limits of $500,000 per person and $1,000,000 per accident for Bodily Injury Liability and limits of $500,000 aggregate on Property Damage Liability. This policy shall include liability for explosions,....

2. ... Such policies shall include a waiver of subrogation against ANR or shall name ANR as additional insureds.

Pursuant to these contractual agreements, the district court permitted ANR to file a third-party complaint against E–CON. Prior to the personal injury trial, the district court dismissed the personal injury claims against ANR and E–CON while allowing the plaintiffs to proceed to trial against Allied–Signal. At the same time, ANR and E–CON agreed to have their third-party indemnification issue heard by

the court following the completion of the personal injury trial. The jury found Allied–Signal liable and awarded one of the personal injury plaintiffs (and his wife) $700,000 and the other plaintiff $80,000. Following a separate bench trial, the district court held E–CON "liable to ANR for its cost of defense, E–CON having failed to provide the defense in accordance with the contract obligations," and awarded ANR nearly $219,000. The district court reached this conclusion because the negligence alleged by the victims of the explosion encompassed activities for which E–CON was contractually responsible.

### DISCUSSION [3]

#### I.

E–CON first argues that the district court erred in requiring E–CON to indemnify ANR for the legal expenses it incurred defending the personal injury suits. According to E–CON, the indemnity agreement does not require E–CON to indemnify ANR against the consequences of ANR's own negligence. North Dakota law rules that "an indemnity agreement will not be interpreted to indemnify a party against the consequences of his own negligence unless that construction is very clearly intended." *Bridston v. Dover Corp.*, 352 N.W.2d 194, 196 (N.D.1984) (citation omitted). E–CON contends that ANR seeks indemnification for the defense of its own negligence, and since the indemnity did not clearly intend such coverage, we should reverse the district court.

We decline to do so for two reasons. First, we agree with the district court that the negligence claims against ANR implicated activities for which E–CON was contractually responsible, and therefore, under the terms of the contract, E–CON must pay for ANR's legal expenses. Second, under North Dakota law, it appears that with respect to the Hebron metering station, E–CON contractually agreed to indemnify ANR against ANR's own negligence, and to indemnify ANR for any legal expenses

---

3. We have reviewed all of the issues raised by E–CON in its brief. We consider many of E– CON's arguments to be meritless but have distilled three issues which require discussion.

ANR incurred while defending claims of negligence.

### A.

■ When the explosion's victim initially brought suit against ANR, they did so on the basis that ANR negligently designed the metering station. ANR's discovery revealed, however, that the plaintiffs' principal complaint against ANR was that an improperly installed gas analyzer caused the metering station explosion. Indeed, one of the personal injury plaintiffs' expert witnesses stated that, "the most likely source" of the explosion was a loose seal and an ungrounded conduit in one of the gas analyzers installed by E–CON. E–CON installed the gas analyzer.

While ANR incurred expenses defending claims against its own negligence, it simultaneously incurred legal costs defending claims that targeted E–CON's negligence. We thus agree with the district court's conclusion that ANR incurred legal costs defending claims that arose from activities for which E–CON was responsible, and therefore, under their contract, E–CON is liable to ANR for its costs of defense.

### B.

■ We also hold that under North Dakota law, E–CON contractually agreed to indemnify ANR against the consequences of its own negligence. If this were not the case, we would be forced to determine which of ANR's legal expenses resulted from defending claims against its own negligence and which of these expenses resulted from defending claims which targeted E–CON's negligence.[4] We do not need to separate the legal costs in this matter, however, because E–CON agreed to indemnify ANR against the consequences of ANR's own negligence. Therefore, under the terms of the indemnity contract, E–CON is responsible for all of ANR's legal expenses.[5]

In *Bridston v. Dover Corp.*, 352 N.W.2d 194 (N.D.1984), the Supreme Court of North Dakota qualified the general rule against construing indemnity agreements to cover the indemnitee's own negligence, explaining "[a]lthough an express provision stating that the indemnitee shall be held harmless for its own acts of negligence would undoubtedly be a good practice in the drafting of an indemnity agreement, we do not believe that the intention of the parties, as contained in the whole of the contract, must be disregarded because of the absence of some 'magic words.' " *Id.* at 196. After establishing this qualification, *Bridston* proceeded to hold "that it was the intention of the parties that [the indemnitee] should be indemnified against a liability arising from its own acts of negligence," despite the absence of express language to this effect. *Id.* at 197. *Bridston* reached this conclusion for four reasons. This reasoning controls here.

First, the indemnitor in *Bridston* agreed to "indemnify and *save harmless* the [indemnitee] against *any and all claims for loss, injury or damage....*" (emphasis added). In an earlier case, the Supreme Court of North Dakota construed the "save harmless" phrase "as a promise to protect and defend the indemnitee from all claims of third parties." *Id.* (citing *St. Paul Fire & Marine v. Amerada Hess Corp.*, 275 N.W.2d 304, 308 (N.D.1979)). The indemnity agreement here is similar. Although it uses the word "hold" instead of "save," it contains the "save harmless" (as well as the "any and all") language which the Supreme Court of North Dakota considers to be critical for determining whether the agreement indemnified ANR for its own negligence.

Second, the Supreme Court of North Dakota found it important that the *Bridston* agreement indemnified and saved harmless the indemnitee "against any and all claims for loss, injury or damage," particularly because there was no "language of limitation or qualification excepting claims aris-

---

4. With regard to this determination, the district court found that the "negligence and defective product complained of were all within the scope of the E–CON contract."

5. This total is discussed in section III *infra.*

ing from [the indemnitee's] own negligence." *Bridston*, 352 N.W.2d at 197. Likewise, the indemnity contract here stated that E–CON "shall defend in the name and on the behalf of ANR any and all suits against ANR seeking to recover damages on account of [losses] caused or alleged to have been caused ... by the Work on account of which E–CON has hereinabove agreed to hold harmless, protect and indemnify ANR...." *See also Barsness v. Gen. Diesel & Equip. Co., Inc.*, 422 N.W.2d 819, 826 (N.D.1988) (discussing the importance of the "any and all" language for determining whether absolute indemnification was intended).

With regard to the work which E–CON agreed to hold ANR harmless, the contract stated that E–CON "assumes entire responsibility and liability and agrees to indemnify and hold harmless ANR for loss or damage sustained, or allegedly sustained, by any person or property as a result of E–CON's operation hereunder...." Although this language clearly limits its coverage to E–CON's activities, the court in *Bridston* did not consider a similar clause to be language of limitation. *Bridston*, 352 N.W.2d at 196 (finding indemnification against indemnitee's own negligence although indemnity agreement limited coverage to loss "arising out of the activities conducted by the" indemnitor).

Moreover, *Bridston* found indemnification where the underlying loss resulted from a combination of the indemnitor's activities and the indemnitee's negligence. *Id.* at 195. The reverse situation exists here, that is, ANR incurred legal expenses because the explosion allegedly resulted from a combination of its activities and E–CON's negligence. The personal injury plaintiffs contended that the negligent installation of a gas analyzer by E–CON, contributed to the metering station explosion. Moreover, during discovery, one of the plaintiffs' expert witnesses testified that the gas analyzer's ungrounded conduit and loose seal were "the most likely source" of the metering station explosion. As the installer of the gas analyzer, E–CON was at least partially responsible for grounding the conduit and ensuring that the seals were tight. Because E–CON's

negligence allegedly contributed to the damages in the personal injury suit, under the indemnity agreement, it must indemnify ANR for the legal expenses ANR incurred in defending the personal injury suits. *Bridston*, 352 N.W.2d at 197; *see also* discussion in part A *supra*.

Third, in *Bridston*, "the indemnity paragraph contain[ed] a specific provision that the [indemnitor] procure liability insurance, including an endorsement adding the [indemnitee] as an additional insured." *Bridston*, 352 N.W.2d at 197. According to North Dakota's Supreme Court, "[t]here could be no purpose for the insurance provision other than to protect [the indemnitee] from the consequences of its own negligent acts." *Id.* The indemnity here specifically directed that E–CON carry liability insurance for explosions and that "such policies shall include a waiver of subrogation against the parties or shall name the parties as additional insureds." Despite the contract's requirement that it do so, E–CON never elected between a waiver of subrogation or naming ANR as additional insureds. We acknowledge that E–CON enjoyed an option (between waiving the right of subrogation against ANR or naming ANR as an additional insured) that was not present in *Bridston*, but we do not consider this distinction decisive. To the extent that a waiver of subrogation rights against ANR would have protected ANR from liability, it served the same function as naming ANR as an additional insured and protected ANR from the consequences of its own negligence.

We also note that E–CON agreed to obtain specified minimum policy limits. "The requirement that the [indemnitor] obtain liability insurance in an amount satisfactory to [the indemnitee] is clearly meant to provide further assurance to [the indemnitee] of indemnity from the [indemnitor] in the event an action is brought against the [indemnitee] for the negligent acts of either or both [the indemnitee and the indemnitor]." *Bridston*, 352 N.W.2d at 197 (citing *St. Paul Fire & Marine v. Amerada Hess Corp.*, 275 N.W.2d 304, 308 (N.D. 1979)). Indeed, several indemnity cases be-

fore the Supreme Court of North Dakota have turned on whether one party is required to obtain insurance and name the other party as an additional insured. *See Rupp v. Amer. Crystal Sugar Co.,* 465 N.W.2d 614, 617 (N.D.1991); *cf. Barsness v. Gen. Diesel & Equip. Co., Inc.,* 422 N.W.2d 819, 825–26 (N.D.1988) (absolute indemnity not intended where contract contained insurance but not hold harmless provisions) and *Vanderhoof v. Gravel Products, Inc.,* 404 N.W.2d 485, 492 (N.D.1987) (absolute indemnity not clearly intended where contract contained hold harmless but not insurance provisions). From these cases, as well as from *Bridston* and *St. Paul Fire & Marine v. Amerada Hess Corp.,* the general rule emerges that when an indemnity agreement contains both hold harmless and insurance provisions, "the parties clearly intend[ ] that [the indemnitee] will be indemnified against the consequences of its own negligence." *Rupp,* 465 N.W.2d at 617. Both of these indemnity provisions are present here.

Fourth, *Bridston* concluded that the indemnity agreement read as a whole "reflect[ed] the unmistakable intent of the parties" that the indemnitee would be indemnified against its own negligence. *Bridston,* 352 N.W.2d at 197. The Supreme Court cursorily reached this conclusion, providing little specific guidance for us here. As just noted, however, that Court has consistently ruled that absolute indemnity is the intention when an agreement contains both hold harmless and insurance provisions. *See Rupp,* 465 N.W.2d at 617; *Bridston,* 352 N.W.2d at 197; *cf. Barsness v. Gen. Diesel & Equip. Co., Inc.,* 422 N.W.2d 819, 825–26 (N.D.1988); and *Vanderhoof v. Gravel Products, Inc.,* 404 N.W.2d at 492.

In light of these cases, we find that under North Dakota law, E–CON agreed to indemnify ANR against ANR's own negligence. Under the contract, E–CON agreed to pay any fees, including court costs and attorneys fees, ANR deemed necessary to defend actions against it. We thus affirm the district court's decision that E–CON was monetarily responsible for the attorneys fees and expenses incurred by ANR while defending the personal injury claims against both it and E–CON.

## II.

E–CON next argues that even if it contracted to completely indemnify ANR, it should not have to do so for expenses arising from the metering station explosion, because the explosion occurred on July 19, 1984, while E–CON ceased working on the project in September of 1983. E–CON did not raise this argument below. "It is old and well-settled law that issues not raised in the trial court cannot be considered by this court as a basis for reversal," except in the extraordinary cases where the refusal to do so would result in a plain miscarriage of justice or would be inconsistent with substantial justice. *Morrow v. Greyhound Lines, Inc.,* 541 F.2d 713, 724 (8th Cir.1976) (citations omitted). This is not one of those extraordinary cases.

■ The indemnity contract is ambiguous as to the duration of E–CON's potential liability. On the one hand, it provides that E–CON "agrees to indemnify and hold harmless ANR for loss ... allegedly sustained ... as a result of E–CON's operations...." This language indicates that as long as the underlying loss results from E–CON's operations then the duration of E–CON's liability is indefinite. On the other hand, the contract required E–CON to maintain insurance "during the progress of the work," suggesting that E–CON's indemnification of ANR ceased as soon as E–CON's work on the project concluded.

The personal injury claims which led to this suit arose in part because of potential negligence in E–CON's work. Read as a whole, the general intent of their contract is for E–CON to indemnify ANR against such claims. For instance, in the "WARRANTY" section of the contract, E–CON guaranteed for one year "that the workmanship in installation shall be proper." Moreover, E–CON agreed to defend "any and all suits" alleged to have been caused by E–CON's operations. Thus, despite the contract's ambiguities, it covers losses that occurred after E–CON finished working on the metering station. Accordingly, the indemnity provisions are relevant here, as discussed in part I *supra.*

### III.

E–CON finally argues that the district court miscalculated the award of damages. We agree.

ANR requested $181,859.75 in damages,[6] $49,500 of which resulted from in-house counsel fees. The district court awarded ANR in-house fees of $37,125 but also awarded ANR $181,859.75 for a total award of nearly $219,000. Apparently, the district court mistook the $181,859.75 as representing only outside counsel fees and costs; in actuality, this figure represented ANR's entire legal costs. Because the district court's in-house fees award was $12,375 less than the in-house fees sought by ANR, we reduce the total amount sought by ANR ($181,859.75) by $12,375, and award ANR a total of $169,484.75.[7]

### CONCLUSION

We affirm the district court's decision to award ANR attorneys fees and costs as required by the indemnity contract, and order E–CON to pay ANR $169,484.75.

---

**6.** ANR claims outside attorneys fees and costs totaling $126,460.03, and in-house fees and costs totaling $50,922.20. ANR additionally claims that pursuing this action resulted in attorneys fees and costs in the amount of $4,477.52.

**7.** ANR suggests, without supporting argument, that we add interest to its award. ANR did not raise this issue in its trial brief presented to the district court. The district court thus did not discuss awarding interest in its order. Accordingly, we decline to award interest on appeal.